*1311 OPINION.
Loa'b :
The principal issue in this case is whether the Commissioner erred in treating the sale in question as a closed transaction in 1918, and in including in the computation of the gain the full face value of the secured notes. The Commissioner’s position is based upon the assumption that the secured notes were worth their full face A alue. The burden .is upon the taxpayer to prove the notes did not have the market value attributed to them. Appeal of Aaron W. Wolfson, 1 B. T. A. 538; Appeal of W. B. Packman, 2 B. T. A. 508. This is not an installment sale within the purview of section 212 (d) of the Revenue Act of 1926, as the initial payments were in excess of one-fourth of the purchase price.
The taxpayer contends that the land was sold for an abnormally high price and that the notes Avere only secured by land which would require a market value of at least $10 per acre to amply secure them, and that the land Avas not in fact worth that amount. There is no evidence that any of the parties attempted to dispose of the notes to any of the banks or in the open market. However, it appears that, in all the transactions in which the notes played a part, they were taken at their full face value. In 1918 the taxpayer accepted $20,460 of the notes for the extinguishment of the debt of S. T. Shaw to her. Brokers who sold the land accepted $3,130 of the notes at their full face value as part of their commission. In 1919 E. R. Wortham accepted the Smith notes (the amount of which is not disclosed) at their full face value in payment of the debt of Shaw arising from a partnership transaction-. It also appears that $26,642.92 of the notes Avas paid in cash and other notes within the year 1918, and that $19,431.50 was likewise retired in 1919. The substituted notes, moreover, were secured by the same land.
The taxpayer, in support of her contention, introduced the testimony of a number of witnesses, Avho testified to the value of the land and the poor market conditions for such notes in 1918. However, as pointed out by the Commissioner, there has been no evidence as to the financial responsibility in 1918 of the maker of the notes, Avhich is an essential factor. In fact, the taxpayer’s witnesses were particular to' specify that they knew nothing detrimental to his financial standing, and one important witness for the taxpayer went so far as to state that the financial standing of the maker was con *1312 sidered good during the year in question. This is corroborated to some extent by the fact that, even under the trying conditions following the cotton depression, the maker of the notes stayed with the land until the spring of 1925, and there is no evidence that he did not promptly meet the payments as they became due. The taxpayer testified that she personally had never seen any of the notes, knew nothing about them, and did not know whether or not any were outstanding.
So far as 1918 is concerned, the evidence is convincing that even the land itself was ample security for the notes. In fact, a portion of- the same tract was sold at $88 per acre, and in 1919 a tract was sold at $114 per acre. There was evidence of sales of near-by cotton lands at even higher prices. We are of the opinion that the taxpayer has failed to prove that the notes in question did not have the market value the Commissioner attributed to them in 1918, and that their face value should be included in the computation of gain resulting from the sale.
The taxpayer, in her petition, alleged error on the part of the Commissioner in not allowing certain depreciation on buildings she owned for rental purposes. No evidence was presented as to their March 1, 1913 value or any other sufficient information upon which the depreciation, if any, could be ascertained. The Commissioner’s determination in this respect should not be disturbed.

The deficiency is $15,168.10. Order will be entered accordingly.